# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | P. Michael Mahoney |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50413 | **DATE** | 8/8/2001 |
| **CASE TITLE** | THORELL vs. MASSANARI | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated in the attached order, the ALJ is affirmed at each step of the adult and childhood disability analysis. Defendant's motion for summary judgment is granted.  Plaintiff's motion for summary judgment on the administrative record and pleadings is denied. Enter attached Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | AUG – 8 2001 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | CLERK | | |
| | | | 01 AUG -8 AM 11:36 | 8/8/2001 | |
| tml | courtroom deputy's initials | | FILED | date mailed notice | |
| | | | Date/time received in central Clerk's Office | gg mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT WD
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION 01 AUG -8 AM 11: 36

DOCKETED

AUG - 8 2001

CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| DANIEL L. THORELL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Case No.  C 0050413** |
| v. | ) |
| | ) **Philip G. Reinhard** |
| **LARRY G. MASSANARI,** | ) **P. Michael Mahoney** |
| **Acting Commissioner** | ) |
| **Social Security Administration** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Daniell L. Thorell, (Plaintiff) seeks judicial review of the final decision of the

Commissioner of the Social Security Administration (Commissioner). See 42 U.S.C. §§ 405(g),

1383(c)(3). The Commissioner's final decision denied Plaintiff's application for Supplemental

Security Insurance (SSI) benefits pursuant to Title XVI of the Social Security Act (the "Act"). 42

U.S.C. §1381(a). This matter is before the Magistrate Judge pursuant to consents filed by both

parties on February 2, 2001. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

## I.    BACKGROUND

On July 25, 1980, Plaintiff's mother, Kim L. Thorell, applied for SSI benefits on behalf of

her son, Daniel Thorell. (Tr. 22-6).  Plaintiff's claim of disability is based on attention deficit

disorder (ADD) and prune belly syndrome.[1]  (Tr. 37).  Plaintiff was found to be eligible for SSI

---

[1]Prune belly syndrome, also known as Eagle-Barrett syndrome, is "a syndrome in which
the lower part of the rectus abdominis muscle and the lower and medial parts of the oblique
muscles are absent, the bladder and the ureters are usually greatly dilated, the kidneys are small

1

benefits as of July 1, 1980. (Tr. 13). On August 22, 1996, the Agency promulgated new standards for disabilities amongst children. [2] As a result of the new standards Plaintiff was no longer considered disabled and received reconsideration notification that all SSI benefits would cease as of July 1, 1997. (Tr. 36). Ms. Thorell promptly filed a Request for Reconsideration and Disability Cessation on July 22, 1997. (Tr. 37-57). On April 13, 1998, the agency denied the Request for Reconsideration, and a Notice of Reconsideration was issued that denied Plaintiff SSI benefits. (Tr. 59-68). Plaintiff then filed a timely Request for Hearing on May 14, 1998, and appeared with counsel, before the Administrative Law Judge (ALJ) on May 18, 1999. (Tr. 227). On September 20, 1999, the ALJ decided that Plaintiff was not considered disabled or eligible for SSI, as a child, after July 1, 1997, nor eligible as an adult. (Tr. 19-21). As a result of the ALJ's decision, Plaintiff filed a Request for Review of Hearing Decision/Order on September 27, 1999. (Tr. 9). The ALJ's decision became the final decision of the agency when the Appeals Council denied review on September 21, 2000. (Tr. 5).

## II.  FACTS

At the time of the ALJ's hearing, Plaintiff was nineteen years old, born on June 27, 1980. (Tr. 37). During Plaintiff's senior year he dropped out of school, nevertheless, he earned his general education diploma (GED) in March of the following year. (Tr. 232). Plaintiff testified that the

---

and dysplastic, with hydronephrosis, and the testes are undescended." W. B. Saunders Co., *Dorland's Illustrated Medical Dictionary* 1638 (28th ed. 1994).

[2] *See* § 211 (a) of Pub. L. 104-193, 110 Stat. 2105, 2188-2189 (codified at 42 U.S.C. §1382c(3)(C)).

decision to leave school was based on insufficient grades that were a direct result of his frequent absences. (Tr. 231-232, 244-245). Plaintiff estimated that he missed approximately four weeks of school each semester due to recurrent kidney infections. (Tr. 245). However, Plaintiff stated that he has not experienced a kidney infection since the removal of his left kidney in December of 1998. (Tr. 248).

Plaintiff also testified that he was enrolled in special education classes from his freshman through his junior years of high school. (Tr. 232-233). On the 1996 Illinois Goal Assessment Program Report Plaintiff scored a 224 in reading compared to the school average of 211 and a 123 in mathematics compared to the 239 school average. A Final Report from Harlem High School Summer Program, dated July 30, 1997, stated that while Plaintiff was cooperative and courteous and works well with others he fails to complete assignments and performs poorly on exams. (Tr. 109).

Plaintiff's work experience encompasses various part-time positions that include busing tables at Outback Steak House, telemarketing at Millward Brown and kitchen work at Fazoli's restaurant. (Tr. 204). At the time of the hearing Plaintiff was working part-time at Pizza Hut as a cook. (Tr. 237). Plaintiff testified that he works approximately 15 hours per week. (Tr. 237). Plaintiff must currently catheterize himself three to four times a day. (Tr. 242). Each time Plaintiff catheterizes himself the process takes approximately ten minutes. (Tr. 242-243). At the hearing, Plaintiff testified that he was able to, and did, catheterize himself during work breaks. (Tr. 242). Subsequent testimony by Ms. Thorell, Plaintiff's mother, yielded a different response. (TR. 250-251). Ms. Thorell asserted that Plaintiff does not catheterize himself at work, although he has been repeatedly warned of the repercussions. (Tr. 250). Ms. Thorell stated that Plaintiff understands the process but does not comprehend the level of severity of noncompliance. (Tr. 250). Furthermore,

Ms. Thorell suggests that Plaintiff does not perform the act because it is not a clean process and he fears that employers would not understand its importance. (Tr. 20-251). As a result Plaintiff suffers from recurrent kidney infections. (Tr. 252). These infections arise as frequently as every month to as infrequently as once every two months. (Tr. 251-252).

A Childhood Disability Evaluation of Plaintiff was performed on May 4, 1994. (Tr. 15). The evaluation was performed by Dr. Jesse L. Gonzalez. (Tr. 120). Dr. Gonzalez asserted that Plaintiff's impairments are severe but do not meet, medically equal, or functionally equal the severity of a disability. (Tr. 120). He further suggested that there was no evidence of cognitive, social stimuli, or concentration limitations. (Tr. 121). However, Dr. Gonzalez did indicate that Plaintiff has a less than marked degree of limitation for motor skills and has difficulty walking and using his hands. (Tr. 121, 123).

### III.    <u>MEDICAL HISTORY</u>

Plaintiff was born with Prune Belly Syndrome on July 25, 1980. He was admitted to Children's Memorial Hospital on April 30, 1991, where he underwent an abdominoplasty. (Tr. 125). The surgery was successful and Plaintiff was discharged on May 4, 1991, with prescriptions for Duco-Lax suppositories, Tylenol #3 and Keflex. (Tr. 126). Thereafter, Plaintiff underwent physical therapy at which time he was fitted for a Jobst body stocking. (Tr. 125). The stocking or binder, a garment designed for pressure management, is a sleeveless body brief with a back zipper closure and scoop neck. (Tr. 153). Plaintiff was required to wear the abdominal binder. (Tr. 133). In December of 1991, Plaintiff suffered discomfort due to the size of the binder. (Tr. 141). After numerous adjustments Plaintiff received a binder that fit comfortably. (Tr. 147-8).

On August 15, 1996, Plaintiff was admitted to Children's Memorial Hospital for revision of a stomach scar. (Tr. 131-133). After his abdominoplasty in 1991, Plaintiff intermittently wore a stomach binder and developed a broadening of the abdominal wall scar. (Tr. 133). As a result, Plaintiff underwent elective surgery to repair the stomach area. (Tr. 133). Upon successful completion of the stomach surgery, Plaintiff participated in outpatient physical therapy at Children's Memorial Hospital. (Tr. 129). As part of Plaintiff's therapy he was required to be fitted for a wall binder, to be worn on a permanent basis. (Tr. 133-134). Plaintiff was discharged from physical therapy on August 19, 1996. (Tr. 129). The Discharge Summary reported that Plaintiff's range of motion was within normal limits and that his lower extremity strength was approximately 3+/4- out of five. (Tr. 129). Although discharged from physical therapy, Plaintiff was instructed to continue to perform knee flexion, gluteal and quad sets and leg and ankle raises one to two times per day. (Tr. 129).

On May 18, 1994, Plaintiff visited Children's Memorial for a periodic checkup and examination. (Tr. 160). The examination indicated that while both Plaintiff's kidneys were in normal position a marked dilation had developed in the left kidney. (Tr. 160). A regular checkup on June 27, 1994, also indicated that Plaintiff's left kidney suffered from a markedly hydronenphrotic appearance. (Tr. 141). A renal ultrasound on November 2, 1994, revealed that a decrease had occurred in the amount of hydronephrosis[3] in the left kidney and minimal amount of fullness had developed in the renal pelvis of the right kidney. (Tr. 138). An additional ultrasound on November 2, 1994, uncovered a further decrease in the degree of hydronephrosis in the left

---

[3] An abnormal enlargement of the kidney that may occur secondary to acute ureteral obstruction (kidney stone) or as the result of chronic kidney disease.

kidney. (Tr. 157).

In 1995 and 1996 Plaintiff visited his physician on various occasions for differing injuries. In December of 1995, Plaintiff visited Dr. Hameeduddin with complaints of an ear ache. (Tr. 177). It was determined that Plaintiff suffered from an ear infection in his left ear and bunions on both the left and right foot. (Tr. 177). In October of 1995, Plaintiff injured his left ankle and received a sprain after a falling during a basketball game. (Tr. 179-180). Plaintiff again visited the emergency room, on January 19, 1996, because of an apparent finger jam that also occurred while playing basketball. (Tr. 176). The contusion yielded mild tenderness but no swelling or restriction in movement resulted. (Tr. 176). Plaintiff visited Children's Memorial Hospital on May 14, 1996, complaining of escalating lower back pain. (Tr. 175). There appeared to be no indication of bone involvement and Dr. Hameeduddin suggested that the injury was the probable result of a muscle sprain, due to Plaintiff's extracurricular activities. (Tr. 175).

On August 9, 1997, a Childhood Function Report 12 to 18 Years was performed by Plaintiffs mother, Ms. Kim L. Thorell. (Tr. 116-120). The report indicated that Plaintiff is often fatigued after a full day of activity and that standing or sitting for a prolonged period of time cause increased soreness and pain in the back region. (Tr. 119). The report also indicated that Plaintiff can cognitively perform all functions but has limited motor skills. (Tr. 116). Ms. Thorell stated that Plaintiff is capable of riding a bike and writing but has difficulty walking and running. (Tr. 116). The report further indicated that Plaintiff has difficulty concentrating and completing projects or school related assignments. (Tr. 117).

During an examination at Swedish American Hospital, on December 1, 1998, Plaintiff was informed that he would shortly have to undergo a left-sided nephrectomy. (Tr. 210). He was also

informed that his self-catheterization must be increased from three to six times a day. (Tr. 210-211). Subsequently, on December 7, 1998, Plaintiff underwent a left nephrectomy procedure in which his left kidney was removed. (Tr. 213-214). The operation was successful and Plaintiff was released on December 11, 1998. He was sent home with prescriptions of oral Vicodin, for pain control, and Macrobid antibiotics. (Tr. 215). Post surgery checkups revealed that Plaintiff's wounds were healing nicely and the removal of his staples occurred without incident. (Tr. 216-19).

In addition to Prune Belly Disease, Plaintiff has been examined for Attention Deficit Disorder (ADD). Plaintiff testified that he was diagnosed with ADD in first or second grade and prescribed Ritalin. (Tr. 244). Plaintiff further testified that he discontinued the medication after a couple of years because of adverse side effects. (Tr. 243-244). Ms. Thorell stated that the effects included whiny behavior, depression and hyperactivity. (Tr. 244). However, no medical evidence existed in the record to substantiate the claim of a childhood diagnosis of attention deficit disorder.

On April 6, 1995, Plaintiff underwent an initial examination for attention deficit disorder. (Tr. 180). Dr. Hameeduddin, Plaintiff's primary care physician, used correspondence from Plaintiff's teachers to develop his evaluation. (Tr. 180). He concluded that it was unlikely that Plaintiff suffered from ADD. (Tr. 180). Instead, Dr. Hameeduddin suggested that Plaintiff be re-evaluated to incorporate a complete psychological examination. (Tr. 180, 243-244).

During the hearing, Plaintiff was re-evaluated for ADD by Gray Hubbard, MS. (Tr. 220). Mr. Hubbard preliminarily stated that Plaintiff suffered from ADD, however, more evaluation needed to occur before he could render a precise assessment. The initial assessment, performed on May 15, 1999, indicated that Plaintizff is easily bored, never finishes projects, and is easily distracted. (Tr. 222). Mr. Hubbard further suggested that Plaintiff participate in ongoing treatment

7

and counseling. (Tr. 222).

## IV.   **STANDARD OF REVIEW**

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). Review by the court, however is not *de novo*; the court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the ALJ." *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir. 1987) (citation omitted); *see also Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case accordingly are entrusted to the commissioner; "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's delegate the ALJ)." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971), *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C. § 405(g); *see also Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988). "Substantial evidence" is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The Seventh Circuit demands even greater deference to the ALJ's evidentiary determinations. So long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability," the determination must stand on review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). Minimal articulation means that an ALJ must provide an opinion that enables a reviewing court to trace the path of his reasoning. *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir.

1987), *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Where a witness credibility determination is based upon the ALJ's subjective observation of the witness, the determination may only be disturbed if it is "patently wrong" or if it finds no support in the record. *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th cir. 1989), *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989). "However, when such determinations rest on objective factors of fundamental implausibilities rather than subjective considerations, [reviewing] courts have greater freedom to review the ALJ decision." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994), *Yousif v. Chater*, 901 F.Supp. 1377, 1384 (N.D.Ill. 1995).

## V.    FRAMEWORK FOR DECISION

### CHILDHOOD DISABILITY

The ALJ concluded that Plaintiff did not meet the Act's definition of "disabled," and accordingly denied his application for benefits. "Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(c)(3)(C). *See Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir. 1988).

The Commissioner proceeds through three steps in determining whether a child claimant is disabled. 20 C.F.R. §416.924(a). The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant

suffers from a severe impairment; and (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments.

At Step One, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520 (a),(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he is found not disabled, regardless of medical condition, age, education, or work experience, and the inquiry ends; if not, the inquiry proceeds to Step Two.

Step Two requires a determination whether the claimant is suffering from a severe impairment.[4] A severe impairment for a child is one which as an impairment or combination of impairments, causes more that a minimal functional limitation. 20 C.F.R. § 416.924(b). In making the determination as to whether a child's impairment is severe the Commissioner considers the claimants impairment(s) in relation to his or her age. 20 C.F.R. § 416.924b(a)(1). If the claimant suffers from a severe impairment, then the inquiry moves on to Step Three; if not, then the claimant is found to be not disabled, and the inquiry ends.

At Step Three, the analysis is sequential. First, the claimant's impairment is compared to those listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. §§ 404.1525(a). The listings streamline

---

[4]The claimant need not specify a single disabling impairment, as the Commissioner will consider the combined affect of multiple impairments. See, e.g., 20 C.F.R. § 404.1520(c). For syntactic simplicity, however, this generic discussion of the Commissioner's decision-making process will use the singular "impairment" to include both singular and multiple impairments.

the decision process by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*, 476 U.S. 467 (1986). Then, if the child claimant does not have an impairment(s) that meets the requirements of the listing, the Commissioner must determine whether the impairment(s) are medically equivalent in severity to an impairment(s) in the listing. 20 C.F.R. § 416.926a(a). In determining whether the claimant meets the listing or is medically equivalent to the listing the Commissioner considers whether the impairment(s) prevents the claimant from functioning independently, appropriately and effectively in an age appropriate manner. 20 C.F.R. § 416.926a(a).

Finally, if the claimant is found to suffer severe impairment(s) that meet or are medically equivalent to the listings, disability must be found and the inquiry is ended. 20 C.F.R. § 404.1520(d). If the claimant's impairment(s) is found not to meet or be medically equivalent to the listing, then the Commissioner must do an individualized functional assessment to determine whether the claimant has an impairment or combination of impairments that would be of comparable severity to an impairment that would disable an adult. 20 C.F.R. § 416.924d(a). The Commissioner must consider the nature of the impairment(s), the claimant's age and ability to be tested at that age, the ability to perform age appropriate daily activities and other relevant factors. 20 C.F.R. §416.924d(a). The functional areas used to measure the severity of a child's impairment (age 6-12) are cognitive/communicative function, social function and personal/behavioral function. 20 C.F.R. Part 404, Subpart P, Appx 1 (Listings) § 112.00(C)(3).

VI.     **ANALYSIS**

Plaintiff's appeal is based on two distinct periods of time. The first period of evaluation falls

11

under the childhood standards based on the July 1, 1997, cessation. The second period under evaluation encompasses an adult claim that begins on June 27, 1998, the date of Plaintiff's eighteenth birthday. The court will examine the two periods separately and will begin its analysis with the childhood claim.

## CHILDHOOD DISABILITY ANALYSIS

The court will proceed through the three step analysis in order.

A. Step One: Is the claimant currently engaged in substantial gainful activity?

In performing the Step One Analysis the ALJ found that Plaintiff had not engaged in any substantial gainful activity at any time relevant to his decision issued on September 20, 1999. (Tr. 16). Although, the ALJ's determination indicates that the Plaintiff did engage in gainful activity, a determination as to whether it qualified as substantial gainful activity was not made. (Tr. 16). Rather the ALJ chose to continue the sequential analysis. (Tr. 16).

Under ordinary circumstances, a claimant is engaged in substantial gainful activity if the claimant's earnings averaged more than seven hundred and forty dollars per month for years after January 1, 2001. (20 C.F.R. § 1574 (b) (2) Table 1, as modified by 65 FR 82905, December 29, 2000).

The finding of the ALJ as to Step One of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step One of the Analysis is affirmed.

B. Step Two: Does the claimant suffer from a severe impairment?

In performing the Step Two Analysis the ALJ found Plaintiff suffered from a severe impairment. Specifically, the ALJ found that Plaintiff suffered from Prune Belly Syndrome .

12

(Tr. 15).

Substantial evidence exists to support the ALJ's determination that Plaintiff suffers from a severe impairment. This finding is not challenged by either party and the court finds no reason to disturb it. The ALJ's finding as to Step Two of the Analysis is affirmed.

C.      Step Three: Does claimant's impairment meet or medically equal an impairment in the Commissioner's listing of impairments?

In performing the analysis for Step Three the ALJ determined that Plaintiff's impairments do not meet or equal any impairment in Appendix 1 to Subpart P of Regulations number 4. (Tr. 17-18). The record demonstrates that Plaintiff's claim of childhood disability relies primarily on Plaintiff's Prune Belly Syndrome, ADD and chronic fatigue. (Tr. 17). The ALJ found that Plaintiff does not have marked limitation in any two areas of broad functioning or any extreme limitation in any one area of broad functioning. (Tr. 17). Thus, Plaintiff's impairments do not produce any limitation or combination of limitations that are the same as specific functional limitations included in the listing. (Tr. 16). Substantial evidence exists to support the ALJ's finding, and the court finds no reason to disturb it.

Next, the ALJ examined Plaintiff's impairments and found that they would not be of comparable severity to an impairment that would disable an adult. The record indicates that Plaintiff underwent corrective surgery in April 1991, and recision surgery in August of 1996. (Tr. 16, 124, 126). Subsequent physical examinations revealed prominent hydronephorisis of the left kidney that appeared to be growing progressively more severe (Tr. 16, 164). The severity of the hydronephorisis resulted in the kidney's removal in December of 1998. (Tr. 18-19) Plaintiff has actively participated in sports, suffered minor sports related injuries and received instruction to take

13

it easy but was not limited in his actions. (Tr. 242). The extent of Plaintiff's impairments, although severe, do not appear to prevent him from functioning independently, appropriately or effectively for his age or manner. Plaintiff is successfully able to remain active, work part-time and complete a GED program.

In order to individually examine Plaintiff's functional assessment the ALJ relied heavily on the "Childhood Disability Evaluation Form," completed by Dr. Gonzales on August 22, 1997. (Tr. 17). The results of the evaluation indicate that Plaintiff possesses a less then marked limitation in motor functioning and no limitation in cognitive, social or communicative functioning. (Tr. 17, 120-123). Dr. Gonzales reported that Plaintiff exhibited no difficulty walking or using his arms or hands and was not restricted in his daily activities. (Tr. 120-123). The ALJ also noted that Plaintiff is successfully able to engage in appropriate daily activities, for his age, by highlighting Plaintiff's participation in sport related activities and part-time employment. (Tr.17-18). Furthermore, the ALJ noted that Plaintiff is under medication and has no specified limitations related to his medications. (Tr. 17). Dr. Gonzales also asserted that Plaintiff's impairments have not produced a disabling effect nor produced any specific attacks or limitations. (Tr. 120-123). After considering Plaintiff's impairments in light of his age and ability to perform daily activities the ALJ found that Plaintiff does not have an impairment or combination of impairments that would be of comparable severity to an impairment that would disable an adult. (Tr. 17-18).

Plaintiff contends that the ALJ failed to give adequate weight to his non-exertional limitations and resultant fatigue. However, the ALJ asserts that Plaintiff's subjective claims of fatigue are unreliable. (Tr. 17). In particular, the ALJ points to the contradiction between the medical evidence and Plaintiff's subjective testimony. (Tr. 16-17). The ALJ emphasizes that an

examination of Plaintiff's medical records did not reveal any consistent complaints of tiredness or fatigue. (Tr. 17, 176). Rather, the ALJ notes that Plaintiff appears physically active and has seen his doctor multiple times for sport related injuries. (Tr. 17, 177). Furthermore, teacher's reports, from Harlem High School Summer Program, fail to mention any incidence of fatigue. The reports indicate that, although Plaintiff performs poorly on exams, he is cooperative and works well with others. (Tr. 17).

Plaintiff also contends that the ALJ failed to adequately examine his ADD impairments. The ALJ did examine Plaintiff's claim of childhood ADD but disregarded its severity. (Tr. 17). While Plaintiff testified that he was diagnosed with ADD as a child no medical evidence was introduced to substantiate this claim. (Tr. 244). Furthermore, the ALJ emphasized a questionnaire that was filled out by Plaintiff's teacher. At no point in the questionnaire did the teacher indicate that Plaintiff exhibited signs of hyperactivity or attention deficit disorder. (Tr. 17-18, 109). Additionally, Plaintiff testified that he suffered from insufficient grades as a result of frequent absences rather than attention problems. (Tr. 244). Although, Plaintiff left school his senior year he successfully completed his GED the following March and plans to continue his education. (Tr. 232). In addition to this, the ALJ noted that Dr. Hameeduddin, Plaintiff's primary care physician, evaluated him for possible ADD and concluded that Plaintiff did not suffer from the disorder. (Tr. 17, 180). In viewing the full weight of the record the ALJ determined that Plaintiff does not meet an impairment found in the listings nor retain an impairment or combination of impairments that are the comparable severity of an impairment that would disable an adult.

Substantial evidence exists to support the ALJ's decision, thus step three of the childhood disability sequential analysis is affirmed.

## VII.   FRAMEWORK FOR DECISION

### ADULT DISABILITY

The ALJ concluded that Plaintiff did not meet the Act's definition of "disabled," and accordingly denied his application for benefits. "Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(c)(3)(C). *See Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir. 1988).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (1998).[5] The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments; (4) whether the claimant is capable of performing work which the claimant performed in the past; and (5) whether the claimant is capable of performing any other work in the national economy.

At Step One, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520 (a),(b). Substantial gainful activity is work that

---

[5]The Commissioner has promulgated parallel regulations governing disability determinations under Title II and Title XVI. See 20 C.F.R. Ch. III, Parts 404, 416. For syntactic simplicity, future references to Part 416 of the regulations will be omitted where they are identical to Part 404.

involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he is found not disabled, regardless of medical condition, age, education, or work experience, and the inquiry ends; if not, the inquiry proceeds to Step Two.

Step Two requires a determination whether the claimant is suffering from a severe impairment.[6] A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The claimant's age, education, and work experience are not considered in making a Step Two severity determination. 20 C.F.R. § 404.1520(c). If the claimant suffers from severe impairment, then the inquiry moves on to Step Three; if not, then the claimant is found to be not disabled, and the inquiry ends.

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. §§ 404.1525(a). The listings streamline the decision process by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*, 476 U.S. 467 (1986). Accordingly, if the claimant's impairment meets or is medically equivalent to one in the listings, then the claimant is found to be disabled, and the inquiry ends; if not, the inquiry moves on to Step Four.

At Step Four, the Commissioner determines whether the claimant's residual functional

---

[6]The claimant need not specify a single disabling impairment, as the Commissioner will consider the combined affect of multiple impairments. See, e.g., 20 C.F.R. § 404.1520(c). For syntactic simplicity, however, this generic discussion of the Commissioner's decision-making process will use the singular "impairment" to include both singular and multiple impairments.

capacity allows the claimant to return to past relevant work. Residual functional capacity is a measure of the abilities which the claimant retains despite his impairment. 20 C.F.R. § 404.1545(a). Although medical opinions bear strongly upon the determination of residual functional capacity, they are not conclusive; the determination is left to the Commissioner, who must resolve any discrepancies in the evidence and base a decision upon the record as a whole. 20 C.F.R. § 404.1527(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Past relevant work is work previously performed by the claimant that constituted substantial gainful activity and satisfied certain durational and recency requirements. 20 C.F.R. § 404.1465; Social Security Ruling 82-62. If the claimant's residual functional capacity allows him to return to past relevant work, then he is found not disabled; if he is not so able, the inquiry proceeds to Step Five.

At Step Five, the Commissioner must establish that the claimant's residual functional capacity allows the claimant to engage in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. The Commissioner may carry this burden by relying upon vocational expert testimony, or by showing that a claimant's residual functional capacity, age, education, and work experience coincide exactly with a rule in the Medical-Vocational Guidelines (the "grids"). *See* 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2; *Walker v. Bowen*, 834 F.2d 635, 640 ( 7th Cir. 1987); Social Security Law and Practice, Volume 3, § 43:1. If the ALJ correctly relies on the grids, vocational expert evidence is unnecessary. *Luna v. Shalala,* 22 F.3d 687, 691-92 (7th Cir. 1994). If the Commissioner establishes that sufficient work exists in the national economy that the claimant is qualified and able to perform, then the claimant will be found not disabled; if not, the claimant will be found to be disabled.

# VII. ANALYSIS

The second issue before the court concerns the ALJ's determination as to the period of time subsequent to June 27, 1998, when Plaintiff achieved his eighteenth birthday. Because the period encompasses an adult determination, the five step adult sequential analysis will be applied.

## ADULT DISABILITY ANALYSIS

The court will proceed through the five step analysis in order.

A. Step One: Is the claimant currently engaged in substantial gainful activity?

In performing the Step One Analysis the ALJ found that Plaintiff had not engaged in any substantial gainful activity at any time relevant to his decision, issued on September 20, 1999. (Tr. 16). Although, the ALJ's determination indicates that Plaintiff did engage in some gainful activity, a determination as to whether it qualified as to substantial gainful activity was not made. (Tr. 16). Rather the ALJ choose to proceed with the sequential five step analysis. (Tr. 16).

Under ordinary circumstances, a claimant is engaged in substantial gainful activity if the claimant's earnings averaged more than seven hundred and forty dollars per month for years after January 1, 2001. (20 C.F.R. § 1574 (b) (2) Table 1, as modified by 65 FR 82905, December 29, 2000).

The finding of the ALJ as to Step One of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step One of the Analysis is affirmed.

B. Step Two: Does the claimant suffer from a severe impairment?

In performing the Step Two Analysis the ALJ found that Plaintiff suffered from a severe impairment. Specifically, the ALJ found that Plaintiff suffered from severe Prune Belly Syndrome.

19

(Tr. 18).

Substantial evidence exists to support the ALJ's determination that Plaintiff suffers from a severe impairment. This finding is not challenged by either party and the court finds no reason to disturb it. The ALJ's finding as to Step Two of the Analysis is affirmed.

C.     Step Three:  Does claimant's impairment meet or medically equal to an impairment in the Commissioner's listing of impairments?

In performing the analysis for Step Three the ALJ determined that Plaintiff's impairment does not meet or equal any impairment in Appendix 1 to Subpart P of Regulations number 4.  (Tr. 18-19).  The ALJ found that Plaintiff's allegations of disabling symptoms were not fully credible. Substantial evidence exists to support the ALJ's finding and the court finds no reason to disturb it. The record demonstrates that Plaintiff's claims of disability rest primarily on the effects of his disease, Prune Belly Syndrome, and the resultant fatigue.  Plaintiff underwent a left nephrectomy in December of 1998. (Tr. 18).  The procedure appeared successful and  Plaintiff did not suffer any post operative complications. (Tr. 18). Follow up treatment indicated that Plaintiff was healing well and no adverse symptoms were manifesting themselves.  (Tr. 18).  Latter consultations revealed problems with recurrent kidney infections. (Tr. 18). These infections are a direct result of Plaintiff's non compliance with necessary frequent self-catheterization duties.  (Tr. 18, 181-193).  The record indicates that Plaintiff is required to catheterize himself approximately six times a day.  (Tr. 181).

Plaintiff contends that the ALJ failed to consider the full severity of his ADD.  The ALJ did address Plaintiff's significant ADD symptoms, but found them less then credible. The ALJ  noted that both Plaintiff's primary care physician and school teacher declined to diagnose him with ADD. (Tr. 180).  Additionally, Plaintiff testified that his school related problems centered around his

20

attendance issues rather than attention disorders. (Tr. 231). As previously stated in the Childhood Disability Analysis section, Plaintiff successfully completed a general education degree and is aspiring to continue his education. (Tr. 232-233). Furthermore, Gary Hubbard, M.S. was the only professional to articulate a diagnosis of ADD, and did so after two visits and only on the day of the hearing. (Tr. 221-222). As a result, the ALJ attributed a reduced amount of credibility to Mr. Hubbard and allotted greater weight to the treating physician's opinion. (Tr. 17-19). Psychologically, an evaluation of the Plaintiff found him to be a remarkably stable individual who possess future educational plans. (Tr. 19). After reviewing the weight of the above information, the ALJ concluded that Plaintiff did not suffer from ADD. (Tr. 18-19).

Plaintiff also contends that the ALJ failed to give sufficient importance to the non-exertional limitations and subsequent fatigue. However, the ALJ's determination accounted for both impairments. The ALJ examined Plaintiff's subjective complaints of fatigue and found them inconsistent with the full weight of the medical evidence. Although Plaintiff stated that he suffers from chronic fatigue he has not complained of nor emphasized this impairment to any treating physician. (Tr. 17). Rather, Plaintiff has remained physically active and participated in sport related activities including basketball and football. (Tr. 18-19, 176, 178). Furthermore, Plaintiff's treating physician has not placed any structured limitations on him and has simply suggested that he take it easy. (Tr. 242). Thus, the record reveals that there is substantial evidence to support the ALJ's decision to give reduced credence to Plaintiff's non-exertional limitations and fatigue. Nonetheless, the ALJ included Plaintiff's subjective complaints of fatigue when determining his RFC and limited Plaintiff to sedentary work. (Tr. 19).

Therefore, the ALJ's determination as to Step Three of the Analysis is affirmed.

D.     Step Four: Is the claimant capable of performing work which the claimant performed in the past?

In performing the analysis for Step Four, the ALJ determined that Plaintiff is unable to perform any of his past relevant work since there was insufficient evidence to show that substantial gainful activity had occurred. The finding of the ALJ as to Step Four of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step Four of the Analysis is affirmed. (Tr. 20 ).

E.     Step Five: Is the claimant capable of performing any work existing in substantial numbers in the national economy?

At Step Five The ALJ determined that although Plaintiff's Residual Functional Capacity did not allow him to perform the full range of light work, there existed a significant number of jobs in the national economy that he can perform. (Tr. 20). The ALJ concluded that Plaintiff is not disabled based on the full weight of the medical evidence and Appendix 1 to Subpart P, 20 CFR 404. (Tr. 20). In making this determination the ALJ noted that Plaintiff is nineteen, and defined as a younger individual. (Tr. 20). Plaintiff possesses a high school education, achieved through a general education diploma. (Tr. 20).

The ALJ examined the record and concluded that Plaintiff maintains the RFC to perform sedentary exertional work activities. (Tr. 20). Sedentary work encompasses lifting no more then ten pounds occasionally and carrying articles like ledgers and small tools. It furthermore requires that the person primarily remain seated, although some standing and walking may be required. 20 C.F.R. § 416.967(a).

The record indicates that Plaintiff has, at times, engaged in gainful activity and is currently

able to work a part-time position. (Tr. 18). Plaintiff has previously engaged in various part-time positions that have, at times, qualified as substantial gainful activity and have fallen outside of the sedentary category. (Tr. 20). In his current capacity, as a cook at Pizza-Hut, Plaintiff lifts objects weighing twenty pounds, well over the level designated for sedentary work (Tr. 280). Plaintiff also testified that he originally worked twenty to twenty-five hours per week and cut back to fifteen hours only when his employer reduced all of the employees' hours. (Tr. 237-238). The record also indicates that Plaintiff is an active individual who participates in numerous sports related activities, including football and basketball. (Tr. 19, 176, 178). Furthermore, Plaintiff's physicians have placed him under no physical limitations or restrictions (Tr. 17).

After examining Plaintiff's age, RFC, work experience and impairments, the ALJ referred to the grids to determine if Plaintiff could perform work existing in substantial numbers in the economy. (Tr. 20). After this examination the ALJ concluded that Plaintiff is not disabled and can occupy a substantial number of positions in the national economy. (Tr. 20). Plaintiff contends that the ALJ erred in not eliciting the opinion of a vocational expert. However, Social Security rules clearly dictate that the ALJ may use the grids, to direct a decision when the ALJ considers the age, RFC and experience of the claimant. 20 C.F.R. pt. 404 subpt. P, app. 2 § 200.00.

Plaintiff further contends that the ALJ erred in failing to utilize a vocational expert because of his non-exertional limitations. A vocational expert is generally summoned when non-exertional limitations exist that limit the full range of work an individual may perform. *Luna v. Shalala*, 22 F.3d 687 (7th Cir. 1994). However, in the case at bar, the ALJ determined that Plaintiff did not possess substantial non-exertional limitations. Non-exertional limitations are impairments of function which directly affect an individual's capability to perform work activities other than primary

strength. Social Security Ruling 83-110. The ALJ concluded that the medical evidence did not support the presence of non-exertional limitations. Rather, the record portrays a physically active individual who engages in part-time work above the sedentary level. (Tr. 18-19). Additionally, the ALJ found that Plaintiff's subjective complaints of fatigue and attention deficit disorder were not substantiated by the full weight of the record and, therefore, less then credible. (Tr. 19-20). Because he is supported by substantial evidence, the ALJ may defer to the grids and is not required to summon a vocational expert. A vocational expert is not required when there is no evidence of non-exertional limitations or those that are present appear insignificant. *Luna*, 22 F.3d at 692.

Therefore, the ALJ's determination as to Step Five of the sequential analysis is affirmed.

## IX. CONCLUSION

For the forgoing reasons the ALJ is affirmed at each step of the child and adult disability evaluation. Defendant's motion for summary judgement is hereby granted. Plaintiff's motion for judgement on the administrative record and pleadings is denied.

**ENTER:**

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 8/8/01

24